UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF NEW YORK

Matthew Ward, individually and on behalf
of other similarly situated parties

                        Plaintiffs,          **COMPLAINT**

                                             **Index No:**  5:18-CV-1053 (GLS/ATB)

              v.

Town of Summer Hill and Cayuga County

                        Defendants           JURY TRIAL DEMANDED

Plaintiff, Matthew Ward, individually, and on behalf of all others similarly situated parties, by and through their attorneys, Scalfone Law PLLC for their Complaint against Defendants, Town of Summer Hill and Cayuga County, state as follows:

## NATURE OF ACTION

1.      This is a class action brought by and on behalf of all persons and non-governmental entities that own property or reside on property located on the following streets in the Town of Summer Hill and/or Town of Sempronius and/or Town of Moravia, Cayuga County, State of New York: Filmore Road and Skinner Hill Road, including but not limited to properties located at Tax

Map #s: 212.00-1-51, 212.00-1-52.1, 223.00-1-1.82, 223.00-1-4, 223.00-1-36, 223.00-1-1.81, 223.00-1-2, 222.00-1-2 ("the Class"). [1]

2.      Upon information and belief, the groundwater and properties of Plaintiffs and residents throughout the Class are contaminated with hazardous substances, including but not limited to, arsenic, benzene, chromium, lead, and naphthalene from the Summer Hill Landfill ("the Landfill"), located at Tax Map # 223.00-1-03 and at coordinates 42.696004, -76.339813. The address nearest to the Landfill is 5453 Fillmore Road, Moravia, NY.

3.      The aforementioned health-hazardous contaminants were recently discovered in soil and water samples taken from Plaintiffs' homes at concentrations exceeding federal safe drinking water standards and federal maximum contaminant concentration standards in soils. The drinking water in Plaintiffs' homes is drawn from groundwater. This contaminated aquifer serves as the source of potable and other domestic water for Plaintiffs. The contaminated soil samples were drawn from 8' to 10' to 18' to 20' below the surface, where the water table in Cayuga County, near Moravia, New York is measured at 18.50' to 21.58' below the surface. Thus, contaminants recorded in soil samples have, and have had, a high probability of seeping below the water table and contaminating the groundwater aquifer, from which Plaintiffs and obtain their drinking water.

4.      Benzene is a highly flammable, volatile organic chemical that is a by-product of industrial processes and a substance contained in crude oil and gasoline. At any concentration, Benzene threatens human health. Benzene is listed as a hazardous waste pursuant to regulations adopted under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901, et.

---

[1] The geographic boundaries identified are based upon information presently available. Plaintiffs expect that, as additional information becomes available, including through the testing of additional private residential wells, the geographic scope of the proposed Class will expand.

Seq., 40 C.F.R. 261, as well as other federal and state soil and groundwater health and safety regulations. Consumption of the contaminant Benzene increases the risk of getting cancer and anemia, or a decrease in blood platelets. Benzene is listed as a hazardous waste according to United States Environmental Protection Agency ("EPA") standards for the toxicity levels of the contaminant and its flammability component. The federal standard for the maximum concentration of contaminants for Benzene is 0.5 mg/L and the New York State Department of Conservation standard for Benzene is 0.0007 mg/kg. TestAmerica has recorded Benzene at concentrations above these standards in both Plaintiffs' water and soil in June 2017, September 2017, and October 2017.

5.      Arsenic is a chemical element that enters drinking water supplies from industrial substances and practices, including paints, dyes, metals, soaps, drugs, and semi-conductors. At any concentration, arsenic threatens human health. Arsenic is listed as a hazardous waste pursuant to regulations adopted under RCRA, 42 U.S.C. § 6901, et. Seq., 40 C.F.R. 261, as well as other federal and state soil and groundwater health and safety regulations. Consumption of the contaminant Arsenic increases risk of cancer, skin damage, and problems with the circulatory system. Arsenic is listed as a hazardous waste according to U.S. Environmental Protection Agency ("EPA") standards for the toxicity levels of the contaminant. The federal standard for the maximum concentration of contaminants for Arsenic is 5.0mg/L. TestAmerica has recorded Arsenic at concentrations above this standard on Plaintiff's property on multiple dates in August 2017 and September 2017.

6.      Lead is a toxic metal that was used in older household plumbing materials. Lead can leach into the ground and water supply from these old materials, including pipes, solder, fixtures, and faucets. At any concentration, lead threatens human health. Lead is listed as a hazardous waste pursuant to regulations adopted under RCRA, 42 U.S.C. § 6901, et. Seq., 40

C.F.R. 261, as well as other federal and state soil and groundwater health and safety regulations. Lead causes a range of detrimental health effects, including behavioral problems, learning disabilities, and attention span deficits, of which children are most at-risk. Additionally, continuous exposure to and consumption of lead contaminants can result in kidney problems and high blood pressure. Lead is listed as a hazardous waste according to EPA standards for the toxicity levels of the contaminant. The federal standard for the maximum concentration of contaminants for Lead is 5.0 mg/L. TestAmerica has recorded Lead at concentrations above this standard on Plaintiff's property on multiple dates in August 2017 and September 2017.

7.      Chromium is both a naturally occurring essential element in humans and, at very high levels, a contaminant produced by industrial processes. Chromium is listed as a hazardous waste pursuant to regulations adopted under RCRA, 42 U.S.C. § 6901, et. Seq., 40 C.F.R. 261, as well as other federal and state soil and groundwater health and safety regulations. Chromium-6 is one of the highly toxic variants of the element and continuous contact with the contaminant can cause allergic dermatitis. At particular concentrations, over which have been recorded at Plaintiffs' property, chromium can threaten human health. Chromium is listed as hazardous waste according to EPA standards for the toxicity levels of the contaminant. The federal standard for the maximum concentration of contaminants for Chromium is 5.0 mg/L. TestAmerica has recorded two variations of Chromium at concentrations above this standard on Plaintiff's property on multiple dates in September 2017.

8.      Naphthalene is an organic compound used in the production of industrial chemicals for plastics, as well as a main ingredient in mothballs. It is classified by the EPA as a possible human carcinogen. Naphthalene is listed as a hazardous waste pursuant to regulations adopted under RCRA, 42 U.S.C. § 6901, et. Seq., 40 C.F.R. 261, as well as other federal and state soil and

groundwater health and safety regulations. Short-term exposure to Naphthalene can cause hemolytic anemia, liver damage, and neurological damage. Long-term exposure to Naphthalene can cause cataracts, retina damage, and risk of cancer. Naphthalene is listed as a hazardous waste according to EPA standards for the toxicity levels of the contaminant. The federal standard for the maximum concentration of contaminants for Naphthalene is 1.50 mg/L in leachate and 3.0 mg/kg in total concentration. TestAmerica has recorded Naphthalene at concentrations above this standard on Plaintiff's property on multiple dates in September 2017 and October 2017.

9.      The groundwater and properties of Plaintiffs are contaminated with the aforementioned hazardous substances as well as several other hazardous contaminants that have been detected in trace concentrations or concentrations that do not rise above the toxicity or human health hazard standards set by federal and state soil and groundwater health and safety regulations. Thus, concentrations of additional detected contaminants may increase over time as leachate and groundwater pollution continues as a result of the acts or omissions of Defendants in the management, maintenance, and control of the Landfill.

10.     This Complaint details and ultimately prays that Defendants be held accountable for their knowledge, acts, and omissions which resulted in the contamination of Plaintiffs' and the Class' properties and domestic water supply.

11.     This Complaint seeks the recovery of: (1) investigative and other response costs incurred by Plaintiffs because of releases of hazardous substances from the Landfill; (2) injunctive relief under Plaintiffs' common law and RCRA claims restraining and enjoining Defendants from allowing continued contamination of the Class area, and compelling Defendants to abate the contamination they have caused at the Landfill, at Plaintiffs' property; (3) compensatory damages caused by Defendants' continuing acts and omissions related to the Landfill; and (4) punitive

damages, as may be permitted by law, for the purpose of punishing Defendants for, *inter alia,* permitting arsenic, benzene, chromium, lead, naphthalene and other hazardous wastes and substances to migrate into the Class area, and failing to promptly and responsibly address and mitigate the threats and to warn Plaintiffs and Class area families of the contamination of their water supply with vinyl chloride.

## PLAINTIFFS

12.    Plaintiff Matthew Ward is a citizen of the State of New York and is the owner of the Real Property located at 6053 Filmore Road, Sempronius, New York 13118, which is also his residence.

13.    This Action is brought under FRCP § and (other EPA law) as a class action, the unnamed members of the proposed class are property owners in the immediate vicinity of the Landfill that are likely to have the same damages proximately caused by the actions and/or omissions by Defendants as set forth more fully herein below.

## DEFENDANTS

14.    Defendant Town of Summer Hill is a New York municipal corporation with offices at 13606 State Route 90, Locke, New York 13092.

15.    Defendant, Cayuga County is a New York municipal corporation with offices at 160 Genesee Street, Auburn, NY 13021.

## JURISDICTION AND VENUE

16.    This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this case arises under the laws of the United States of America; specifically, because Count I is predicated upon and seeks relief pursuant to the Comprehensive Environmental

Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607; and Count II is predicated upon and seeks relief pursuant to RCRA, 42 U.S.C. § 6901, et seq.

17.    This Court has supplemental jurisdiction over the New York state law claims set forth in Counts III through VI pursuant to 28 U.S.C. § 1367. All claims arise out of the same wrongful conduct of the Defendants, and involve substantially overlapping evidence and witnesses. The response costs Plaintiffs seek to recover under their CERCLA claim are also sought as damages under Plaintiffs' common law claims. Plaintiffs seek substantially the same injunctive relief -- an order restraining and enjoining Defendants from allowing continued contamination of the Class area, and compelling Defendants to abate the contamination they have caused at the Landfill and in the Class area -- under their common law and their RCRA claims. Accordingly, pursuant to 28 U.S.C. § 1367, Plaintiffs' state law claims are so related to Plaintiffs' federal questions claims that they form part of the same case or controversy under Article III of the United States Constitution.

18.    Pursuant to 42 U.S.C. § 9613(b) and 28 U.S.C. § 1391(b), venue is proper in this Court because this case arises out of actions occurring at, and pertaining to property located in, Cayuga County New York, within this judicial district.

### THE LANDFILL

19.    The Landfill is located at coordinates 42.696004, -76.339813 on approximately 22.7 acres of land in or near Summer Hill, New York. Approximately 13 acres are reported to contain various forms of waste.

20.    The nearest address is 5453 Filmore Road, Moravia, New York.

21.     Upon information and belief, the entrance to the Landfill off of Filmore Road is blocked by a three-foot soil berm, which was placed three years ago by the Town to mitigate unauthorized dumping.

22.     Upon information and belief, Landfill operations are reported to have begun in approximately 1963 and are reported to have ended in approximately 1982.

23.     Upon information and belief, a portion of the Landfill was operated originally as a municipal solid waste landfill, or a sanitary waste landfill.

24.     Upon information and belief, other portions of the Landfill received other forms of waste, both hazardous and non-hazardous wastes, including household wastes, commercial wastes, generator waste, and industrial solid wastes.

25.     Upon information and belief, a majority, if not all, of the Landfill is not lined with any form of composite liner system.

26.     Upon information and belief, the Landfill was in violation of New York State Department of Environmental Conservation Refuse Disposal regulations during three or more monthly inspections since May 1972, violations including but not limited to inadequate compaction and cover of wastes.

27.     Upon information and belief, Landfill waste remains visible, exposed, and disturbed, including but not limited to tire piles amounting to 250 to 300 tires. Additionally, Landfill side slopes have eroded and exposed waste that was once below the ground surface.

28.     Upon information and belief, the Landfill does not contain Groundwater Monitoring Wells, a Gas Management System, nor a Leachate Collection System.

29.     Upon information and belief, major Leachate outbreaks, or water that has percolated through waste solids and extracted soluble and insoluble matter from such waste, have been observed along the entire southern portion of the Landfill. Soil staining, surface water sheen, and/or iron floc have also been observed.

30.     Upon information and belief, the Landfill cover is predominantly a densely vegetated, open field with a few trees and built on the side slope of a hill, which dips down toward the south. The landfill forms a steep bank of about 20' to 30' along the south side of the site, which extends into a wetland area.

31.     Upon information and belief, Defendants have owned, operated, maintained and otherwise controlled the Landfill for approximately twenty (20) years.

32.     Despite the long history of ownership, operation, maintenance and control over the Landfill, upon information and belief the Defendants did not commission any testing of the surrounding soil and water adjacent to the Landfill until 2016.

33.     EPA regulation 51 C.F.R. § 264 requires the owner or operator of a landfill to close the facility in a manner that minimizes any need for further maintenance and controls, minimizes, or eliminates the escape of post-closure hazardous wastes, leachate, contaminated run-off, hazardous constituents, and hazardous waste decomposition products into ground and/or surface waters or the atmosphere to the extent necessary to protect human health and the environment.

34.     Specifically, for 30 years following the closing date of the Landfill, the owner or operator must prepare a written post-closure plan in accordance with § 264.118 and submit post-closure notices to required parties in accordance with § 264.119, particularly notice requirements for wastes disposed of prior to January 12, 1981.

35.     Hazardous substances from the Landfill, including but not limited to arsenic, benzene, chromium, lead, and naphthalene have contaminated the aquifer underneath the Landfill and the entirety of Plaintiffs' properties. Plaintiffs rely upon this aquifer for their domestic water supply.

## CLASS ALLEGATIONS

36.     Plaintiffs bring each of the claims in this action in their own names and on behalf of a class of all persons similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

37.     The class consists of all persons and non-governmental entities that own property or reside on property located on the following streets in the Town of Summer Hill and Town of Sempronius, Cayuga County, New York: Filmore Road, Skinner Hill Road ("the Class").

38.     The Class consists of approximately 80 homes and more than 150 people and is accordingly so numerous that joinder of all members is impractical.

39.     There are core questions of law and fact that are common to each member of the Class, such as: whether there have been releases of hazardous substances, including but not limited to arsenic, benzene, chromium, lead, and naphthalene at and from the Landfill while under the Defendants' ownership, operation, maintenance and/or control; whether Defendants have acted reasonably to prevent releases from the Landfill of hazardous wastes so as to prevent their release into the Class area; whether contaminants from the Landfill, including but not limited to vinyl chloride, have impacted the drinking water aquifer beneath the Class area; whether contamination of the aquifer with arsenic, benzene, chromium, lead, naphthalene or other volatile and/or toxic contaminants, has caused soil and groundwater contamination in the Class area; whether there

currently exists an imminent and substantial endangerment as a result of the Defendants wrongful handling, storage and disposal of hazardous wastes at and from the Landfill; and whether Defendants should be restrained and enjoined from allowing continued contamination of the Class area, and compelled to abate the contamination they have caused in the Class area.

40.    Plaintiffs' claims are typical of the claims of the Class. All claims are based upon Defendants' common course of conduct.

41.    Plaintiffs will fairly and adequately represent and protect the interests of the Class.

## COUNT I
## CERCLA COST RECOVERY, 42 U.S.C. § 9607(a)

42.    Plaintiffs, individually and on behalf of the Class defined herein, repeat, reallege and incorporate by reference paragraphs 1 through 42 of the Complaint as paragraph 43 of Count I, as though fully set forth herein.

43.    Defendants, the Town of Summer Hill and Cayuga County, are "persons" as defined by Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

44.    Defendants are "owners" and/or "operators" of a "facility" and/or "generators" and/or "transporters" of "hazardous substances" within the meaning of CERCLA, 42 U.S.C. § 9601. Defendants are covered persons under 42 U.S.C. § 9607(a). As a result, Defendants are liable persons under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

45.    The Landfill is a "facility" as defined by § 101 (9) of CERCLA, 42 U.S.C. § 9601(9).

46.    "Releases" of "hazardous substances," including but not limited to arsenic, benzene, chromium, lead, and naphthalene from the Landfill into the "environment" are continuing.

47.     These releases have resulted in the migration of hazardous substances, including the aforementioned contaminants, into the Class area.

48.     As a result of these releases, Plaintiffs and members of the Class have incurred and will continue to incur "response costs" within the meaning of Section 101(23)-(25) of CERCLA, 42 U.S.C. §§ 9601 (23)-(25). All such costs are reasonable and, when applicable, consistent with the National Contingency Plan. Plaintiffs did not pollute the Landfill, contaminate their own properties, or otherwise cause any releases of hazardous substances, including but not limited to arsenic, benzene, chromium, lead, and naphthalene.

49.     As a result of the aforementioned "response costs" incurred by Plaintiffs and members of the Class, Defendants are strictly liable under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a) for all such costs. Plaintiffs' and members of the Class' response costs include but are not limited to diminution of property value of Plaintiffs' property and properties of the Class, monies paid for bottled water, filtration systems, private well sampling, and injury to the natural resources of Plaintiffs' property and property of the Class.

**COUNT II**
**RCRA § 6972(a)(1)(B)**

50.     Plaintiffs, individually and on behalf of the Class defined herein, repeat, reallege and incorporate by reference paragraphs 1 through 50 above as paragraph 51 of this Count II, as though fully set forth herein.

51.     Defendants, the Town of Summer Hill and Cayuga County are "persons" as defined in § 6903(15) of RCRA.

52.     The contaminants, including but not limited to arsenic, benzene, chromium, lead, and naphthalene, handled, stored and disposed of, and released and migrating from the Landfill

and the resulting contaminated media are hazardous wastes as defined in RCRA, 42 U.S.C. §§ 6903(5) and (27).

53.    Defendants, the Town of Summer Hill and Cayuga County, engaged in the handling, storage, treatment, transportation or disposal of hazardous wastes in a manner which has contributed to and is contributing to the contamination of the Landfill, Plaintiffs' properties, the properties of the Class, and the drinking-water aquifer.

54.    Specifically, throughout the period of the Town of Summer Hill and Cayuga County's control, oversight, and/or operation of the Landfill, various hazardous wastes, including but not limited to by-product contaminants arsenic, benzene, chromium, lead, and naphthalene, which had been disposed of at the Landfill, migrated out of the Landfill property and contaminated the surrounding environment. Those releases from the Landfill have recently been determined to have contaminated the Properties and the private wells located on the Properties which the Plaintiffs rely upon for their drinking water supply. Defendants are responsible for the subject contamination by failing to properly handle, dispose, and contain the hazardous wastes at and released from the Landfill, and by failing to abate the contamination that has migrated from the Landfill onto the Properties. Due to the current disposal, release and migration of hazardous waste contaminants through the soil and into the groundwater, including the drinking water supply, the releases from the Landfill present an imminent and substantial endangerment to health and the environment as defined in RCRA. As contributors to this hazardous condition, Defendants are subject to suit pursuant to RCRA § 6972(a)(1)(B).

55.    In accordance with RCRA § 6972(b) and 40 C.F.R. 254, Plaintiffs sent a letter by certified mail, return receipt requested, dated March 29, 2018, to Defendants, the Town of Summer Hill and Cayuga County, providing them with prior notice of the violations alleged and the claims

made in this Count. Copies of the letter were also sent in a like manner to the President of the United States, Administrator of the EPA, the Regional Administrator for Region II of the EPA, and the Commissioner of the New York Department of Environmental Conservation. This letter was received by Defendants more than 60 days prior to the filing of this Complaint. No actions have been commenced by these federal or state environmental authorities during this 60-day period which would preclude Plaintiffs from pursuing a claim herein under Section 7002(a)(1)(B).

56.    Pursuant to RCRA § 6972(b)(2)(F), Plaintiffs will serve a copy of this Complaint on the Attorney General of the United States and the Administrator of the EPA.

57.    This Court has jurisdiction pursuant to RCRA § 6972(a) to enter injunctive relief restraining and enjoining Defendants from allowing continued contamination of the Class area, and compelling Defendants to abate the contamination they have caused at the Landfill and in the Class area. Under RCRA, this Court should also award Plaintiffs their attorneys' fees and expert costs and impose any appropriate civil penalties.

## COUNT III
## NEGLIGENCE

58.    Plaintiffs, individually and on behalf of the Class defined herein, repeat, reallege and incorporate by reference paragraphs 1 through 57 of the Complaint as paragraph 58 of this Count III, as though fully set forth herein.

59.    Defendants had a duty to Plaintiffs not to permit or allow hazardous substances, including but not limited to contaminants such as arsenic, benzene, chromium, lead, and naphthalene, at the Landfill to invade residential properties and contaminate the drinking water aquifer. Defendants also had a duty to promptly respond to known releases of contaminants in a manner which would prevent further contamination, and otherwise protect Plaintiffs' properties.

60.    Defendants have breached these duties by their negligent acts and omissions in owning, operating, maintaining, and controlling the Landfill and by their improper release and disposal of contaminants, their failure to properly handle, dispose of, contain, secure, and abate the hazardous wastes at, and released from, the Landfill, their failure to properly secure the landfill upon its closure and prevent the discharge and release of the contaminants into the drinking water supply, and their failure to promptly and effectively investigate and address the disposal and migration of contaminants, including but not limited to arsenic, benzene, chromium, lead, and naphthalene, off-site and into the groundwater beneath the Class area.

61.    Defendants have also breached their duty to warn Plaintiffs of the threatened and actual contamination of the drinking water aquifer (with arsenic, benzene, chromium, lead, and naphthalene released from the Landfill) that serves residences within the Class area.

62.    Defendants' breaches of their duties to Plaintiffs are continuing and have caused substantial injury and damage to Plaintiffs, including but not limited to: damages incurred as a result of injury to Plaintiffs' property and properties of the members of the Class; damages to natural resources on these Properties; actual and threatened detrimental health effects to Plaintiffs and members of the Class; past and future medical costs incurred by such detrimental health effects to Plaintiffs and members of the Class; and economic losses including but not limited to loss of business and lost rental value, diminution in property value, relocation costs, and attorney fees.

63.    Defendants' breaches of their duties to Plaintiffs are continuing and have caused substantial injury and damage to Plaintiffs and the Class such that Plaintiffs and the Class are entitled to punitive damages in an amount that the Court deems sufficient to deter Defendants and other such similarly situated individuals and/or companies from acting in a similar manner.

64.     In addition to damages, Plaintiffs also seek injunctive relief pursuant to this Count, in the form of an injunctive order restraining and enjoining Defendants from allowing continued contamination of the Class area, and compelling Defendants to abate the contamination they have caused in the Class area.

## COUNT IV
## PRIVATE NUISANCE

65.     Plaintiffs, individually and on behalf of the Class defined herein, repeat, reallege and incorporate by reference paragraphs 1 through 64 of the Complaint as paragraph 65 of this Count IV, as though fully set forth herein.

66.     Defendants continue to own, maintain, operate and control the Landfill, a private nuisance to Plaintiffs.

67.     Contaminants improperly disposed at and released from the Landfill, including hazardous wastes such as arsenic, benzene, chromium, lead, and naphthalene, continue to migrate into the Class area. This contamination includes Plaintiffs' exposure to the aforementioned contaminants via groundwater and soil.

68.     Defendants have failed to properly dispose of, contain and abate the hazardous wastes at, and released from, the Landfill. Defendants' continuing post-closure maintenance of the Landfill so as to cause and permit further contamination of the Class area constitutes an unreasonable, unwarranted and unlawful use of the Landfill. Defendants' maintenance of this nuisance has substantially interfered with Plaintiffs' reasonable use and enjoyment of their properties.

69.     Plaintiffs are entitled to and seek an injunction against Defendants' continued maintenance of this nuisance and immediate abatement of the substantial harm to Plaintiffs' health and property caused by the contamination emanating from the Landfill.

70.     Moreover, Plaintiffs have incurred substantial damage as a result of Defendants' ongoing maintenance, or lack thereof, of the Landfill, constituting a private nuisance. In addition to damages, Plaintiffs also seek injunctive relief pursuant to this Count, in the form of an injunctive order restraining and enjoining Defendants from allowing continued contamination of the Class area, and compelling Defendants to abate the contamination they have caused at the Landfill and in the Class area.

## COUNT V
## TRESPASS

71.     Plaintiffs, individually and on behalf of the Class as defined herein, repeat, reallege and incorporate by reference paragraphs 1 through 70 of the Complaint as paragraph 71 of this Count V, as though fully set forth herein.

72.     Defendants continue to cause and permit contaminants, including hazardous wastes such as arsenic, benzene, chromium, lead, and naphthalene, to enter the Class area. This entry is unlawful and without the consent of Plaintiffs and the members of the Class.

73.     In addition, contaminants, including but not limited to arsenic, benzene, chromium, lead, and naphthalene, that originate from the Landfill are known, or should be known, by Defendants to be present at, on and/or in Plaintiffs' properties. In spite of this knowledge, Defendants have failed to remove or otherwise remediate these remaining contaminants from Class members' properties.

74.    Defendants have failed to properly dispose of, contain and abate the hazardous wastes at, and released from, the Landfill. Defendants' past and continuing wrongful acts and omissions have resulted and continue to result in: releases of contaminants from the Landfill into the environment; migration of such contaminants to the Class area; and invasion of Class area properties, without the consent of Plaintiffs.

75.    The invasion of Plaintiffs' properties is unreasonable and unlawful. As a result of Defendants' continuing trespasses, the lawful rights of Plaintiffs to use and enjoy their property have been substantially interfered with, and Plaintiffs have been damaged. In addition to damages, Plaintiffs also seek injunctive relief pursuant to this Count, in the form of an injunctive order restraining and enjoining Defendants from allowing continued contamination of the Class area, and compelling Defendants to abate the contamination they have caused at the Landfill and in the Class area.

## COUNT VI
## WILLFUL AND WANTON MISCONDUCT

76.    Plaintiffs, individually and on behalf of the Class as defined herein, repeat, reallege and incorporate by reference paragraphs 1 through 75 as Paragraph 76 of this Count VI, as though fully set forth herein.

77.    Defendants have acted in a willful and wanton manner and in reckless indifference to the safety of Plaintiffs' health and property, and to the safety of the general public.

78.    Defendants knew that Plaintiffs and the public relied upon the groundwater for their domestic water supply. Defendants knew, or should have known, that Plaintiffs and the public were threatened and failed to investigate and mitigate the threat to Plaintiffs. Defendants ignored signs of leachate, eroded slopes, exposed waste, which exhibited the actual or threatened

contamination of soil and groundwater off-site. Knowing—or recklessly ignoring the readily accessible facts—of private well use in the vicinity of the Landfill, Defendants failed and refused to warn residents of the actual or threatened contamination of the drinking water aquifer.

79.    Defendants have failed to properly dispose of, contain and abate the hazardous wastes at, and released from, the Landfill. Defendants failed to remediate the Landfill and thereby continued to contaminate drinking water sources off-site. Defendants also failed to remediate the groundwater Defendants knew, or should have known, to be contaminated with hazardous substances, including hazardous wastes such as arsenic, benzene, chromium, lead, and naphthalene, from the Landfill.

80.    As a direct and proximate result of the willful, wanton, and reckless acts and/or omissions of Defendants, Plaintiffs have sustained damages. Damages incurred by Plaintiffs include, but are not limited to, damage to Plaintiffs' respective Properties, damages to natural resources on these Properties, actual and threatened detrimental health effects to Plaintiffs, past and future medical costs incurred by such detrimental health effects to Plaintiffs and members of the Class, economic losses including but not limited to loss of business and lost rental value, diminution in property value, relocation costs, and attorney fees.

81.    In addition to damages, Plaintiffs also seek injunctive relief pursuant to this Count, in the form of an injunctive order restraining and enjoining Defendants from allowing continued contamination of the Class area, and compelling Defendants to abate the contamination they have caused in the Class area.

**RELIEF REQUESTED**

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor and in favor of the Class and against Defendants, and pray:

A.   That the Court certify Plaintiffs' action as a class action on behalf of all others similarly situated, appoint Plaintiffs' counsel as counsel for the Class, and order that Notice be given to the Class of this action;

B.   That the Court declare that Defendants are liable under Section 107(a) of CERCLA for the response costs incurred by Plaintiffs and the Class as a result of, and in connection with, the release of hazardous substances, including pre-judgment interest on such costs and order that Defendants reimburse Plaintiffs for such response costs;

C.   That the Court award Plaintiffs judgment for all response costs including costs for a permanent and safe domestic water supply to Plaintiffs, pre-judgment interest, and attorneys' fees incurred by Plaintiffs as of the trial of this matter;

D.   That pursuant to Plaintiffs' RCRA and common law claims the Court preliminarily and permanently restrain and enjoin Defendants from allowing continued contamination of the Class area, and compel Defendants to abate the contamination they have caused at the Landfill and in the Class area;

E.   That the Court award Plaintiffs compensatory and/or other appropriate damages in an amount to be determined by the evidence at trial and allowed by law;

F.   That the Court award Plaintiffs punitive damages as allowed by law and in an amount sufficient to deter Defendants and other companies and/or individuals who are similarly situated from acting in a similar manner; and

G. That the Court award Plaintiffs and the Class their attorneys' fees, expert costs, costs of

suit and such other and further relief as the Court deems appropriate and just.

### JURY TRIAL DEMANDED

Plaintiffs request trial by jury on all issues so triable.


Dated: July 17, 2018                      s/Melody D. Westfall
                                          Melody D. Westfall, Esq.
                                          Scalfone Law, PLLC
                                          *Attorneys for Plaintiff*
                                          247 W. Fayette St., Suite 203
                                          Syracuse, NY 13207
                                          (315) 412-0440
                                          Scalfone@scalfonelaw.com